**DEREK SMITH LAW GROUP, PLLC**
SCOTT E. DIAMOND, ESQUIRE
Attorney ID No. 44449
1835 Market Street, Suite 2950
Philadelphia, PA 19103 (215) 391-4790
scott@dereksmithlaw.com
*Attorneys for Plaintiff, Eyleen Archie*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EYLEEN ARCHIE, <br><br>               Plaintiff, <br><br>     *v.* <br><br> CITY OF PHILADELPHIA <br><br>          Defendant. | **FIRST COMPLAINT** <br><br> JURY TRIAL DEMANDED |

### CIVIL ACTION COMPLAINT

Plaintiff, **EYLEEN ARCHIE**, by and through her counsel, The Derek Smith Law Group, PLLC, hereby brings this civil action against Defendant, **CITY OF PHILADELPHIA**. Upon information and belief and in support thereof, Plaintiff alleges as follows:

### NATURE OF THE ACTION

1.  This is an action seeking damages to remedy injuries Plaintiff has suffered, continues to suffer, as a result of unlawful employment discrimination and retaliation by the named Defendant against Plaintiff in violation of Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. § 2000e, et seq. ("Title VII"); Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"); Section 1983 of the Civil Rights Act of 1871, as codified, 42 U.S.C. § 1983, et seq. ("Section 1983"); the Pennsylvania Human Relations Act

43 P.S. §§ 2000e, et. seq. ("PHRA"), and the Philadelphia Fair Practices Ordinance, §9-1100, et. seq.

2.   Plaintiff, Eyleen Archie seeks injunctive and declaratory relief, actual damages, compensatory damages, punitive damages, liquidated damages, reinstatement, pre- and post-judgment interest, reasonable attorneys' fees, and costs of suit to redress the injuries she has suffered as a result of being discriminated against based upon her race, sex, and in retaliation for her opposition to Defendant's unlawful employment practices.

## PARTIES

3.   Plaintiff, **EYLEEN ARCHIE** (hereinafter "Plaintiff" or "ARCHIE") is an adult individual resident of Philadelphia County and a citizen of the Commonwealth of Pennsylvania.

4.   Defendant, **CITY OF PHILADELPHIA**, (hereinafter "Defendant" or "the City") is a municipality of the Commonwealth of Pennsylvania.

5.   The City owns, operates, manages, directs and controls the Philadelphia Police Department (the "PPD"), which employs the defendants named herein who at all relevant times were employed by the City and the PPD, acting under color of state law, and operating pursuant to official policies, customs and practices of the City and the PPD.

6.   As used in this Complaint, all references to "the City" or "the PPD" shall refer to Defendant THE CITY OF PHILADELPHIA.

7.   At all times material, Plaintiff was and is an "employee" of the City within the meaning of all applicable law.

8.   At all times material, the City was and is Plaintiff's "employer" within the meaning of all applicable law.

9.  At all times material, the City acted or failed to act through its agents, servants, and employees, including the individual Defendant named herein, each of whom were acting within the course and scope of their employment.

10. Defendants are being sued in their individual and official capacities.

11. Defendants systematically and willfully violated workers' rights under Title VII, Section 1981, Section 1983, and the Philadelphia Fair Practices Ordinance.

## JURISDICTION AND VENUE

12. This Court has subject matter over Plaintiff's claims arising under Federal law pursuant to 28 U.S.C. §1331 because it involves questions of federal law under Title VII, Section 1981, Section 1983, and the Fourteenth Amendments to the United States Constitution.

13. Venue in this Court is proper under 28 U.S.C. § 1391(b) because a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district, and Defendants are subject to personal jurisdiction in this district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

14. On October 11, 2021, Plaintiff dual filed with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC") a Charge of Discrimination against Defendant CITY OF PHILADELPHIA.

15. On July 3, 2022, the EEOC issued a Notice of Right to Sue on Plaintiff's Charge of Discrimination against Defendant CITY OF PHILADELPHIA (Charge No. 530-2022-00280).

16.  Plaintiff has timely filed this action and has complied with all administrative prerequisites necessary to bring this lawsuit.

17.  Plaintiff's claims under the Pennsylvania Human Relations Act ("PHRA") are still pending before the Pennsylvania Human Relations Commission ("PHRC") because less than one year has elapsed since the PHRC assumed jurisdiction over her charges.

18.  Plaintiff's PHRA claims will not ripen until after October 11, 2022. On that date, Plaintiff will seek leave to amend this complaint to assert her PHRA claims. See Fed. R. Civ. P. 15(a) (Courts "freely give leave to amend when justice so requires"), 15(c) (Amendments "relate back" to the date of the original pleading), and 15(d) (Plaintiffs may "serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented").

## **FACTUAL ALLEGATIONS**

19.  In or around February 12, 2007, Plaintiff was hired by THE CITY as a Police Officer with the 22nd District.

20.  At all times material, Plaintiff was and is an African American female.

21.  While working in the 22nd District, Plaintiff was assigned to the Court Liaison Unit.

22.  While patrolling, Plaintiff was required to carry a service firearm.

23.  On or around January 5, 2018, Defendant initiated an Internal Affairs investigation into disciplinary charges brought against Plaintiff.

24.  The same day, Plaintiff was forced to turn in her firearm while the Internal Affairs investigation was conducted.

25.   Plaintiff was also placed on restricted duty and was transferred from her unit in the 12th District to the Delaware Valley Intelligent Center (DVIC).

26.   While working in the DVIC, Plaintiff was restricted to administrative duties and was neither permitted to actively patrol, nor was Plaintiff permitted to perform any police duties that required the carrying of a service firearm.

27.   To date, Plaintiff has never been interviewed by Internal Affairs in relation to the investigation initiated on January 5, 2018.

28.   To date, Plaintiff has never received any communications from Internal Affairs regarding the charges brought on January 5, 2018.

29.   Four (4) years have now passed since Plaintiff's firearm was unlawfully taken.

30.   In or around March 2021, Plaintiff received additional disciplinary charges related to a photo of Officer Brooke Quinn taken by Plaintiff that was forwarded to news reporter and former Philadelphia Police Officer, Andre Boyer.

31.   Plaintiff attended a hearing in relation to the March 2021 disciplinary charges where she was found innocent of any wrongdoing.

32.   The matter was heard before a panel that consisted of one police officer, one lieutenant, and one captain.

33.   At the conclusion of the hearing, Plaintiff was told that she would receive a decision from the panel within 30 days.

34.   Several weeks later, Plaintiff received a call from Captain Davis of the Court Liaison Unit informing Plaintiff that she was found innocent of any wrongdoing and cleared for full, unrestricted duty.

35. Captain Davis further informed Plaintiff that she had been reassigned from the Court Liaison Unit to the 12th District.

36. Plaintiff was never informed of the outcome of the hearing held in relation to the March 2021 disciplinary charges.

37. Despite Captain Davis' representation that Plaintiff had been cleared for full duty, Plaintiff learned that she was not fully cleared and that she would continue to be denied the use of her service firearm and therefore prevented from returning to the Court Liaison Unit per Philadelphia Police Department Directive 10.6 ("Barring exigent circumstances, sworn personnel that have not successfully completed the recruit/in-service pistol training, shall not carry or handle any city-owned pistols or authorized alternate pistols").

38. The Plaintiff was, in effect, still placed on restricted duty and was never returned to her assigned unit.

39. Plaintiff was further informed that she was required to undergo re-certification training with her firearm as her prior certification had lapsed during the three-year period of the Internal Affairs investigation.

40. Plaintiff agreed to undergo re-certification so that her service firearm would be returned such that she could return to full duty.

41. In or around May 2021, Plaintiff attended two (2) weeks of training with the Firearm Training Unit.

42. At the conclusion of the two-week training period, Plaintiff received a score of 99 out of 100 possible points, thereby qualifying her to return to full duty.

43. On the last day of training, Firearms Instructor DeNofa informed the class that the scores would take approximately two (2) weeks to clear such that trainees could retrieve their firearm.

44. Plaintiff never received a phone call from anyone regarding the retrieval of her firearm or the status of her re-certification.

45. On or around July 8, 2021, Plaintiff called the Firearms Training unit and spoke to an Officer King.

46. Officer King informed Plaintiff that additional certification and training would be necessary before Plaintiff could retrieve her firearm.

47. Officer King further informed Plaintiff that she would need to travel to Harrisburg to complete written, physical, and psychological evaluations to obtain her re-certification.

48. Plaintiff responded by informing Officer King that her employment was never actually terminated and that her firearm re-certification was the only training that needed to be completed.

49. Officer King responded by stating, "I am only telling you what is told to me."

50. Plaintiff thanked Officer King and ended the telephone call.

51. Following her telephone call with Officer King, Plaintiff contacted Roosevelt Popular (hereinafter "Popular"), the Vice President of the Fraternal Order of Police.

52. Plaintiff relayed her conversation with Officer King to Popular.

53. Upon learning of the conversation, Popular responded, "That is incorrect. Were you terminated?"

54. Plaintiff responded, "No, and I have completed all of my yearly in service training as well as my firearm training."

55.   Plaintiff forwarded all of her in service training certifications to Popular.

56.   Upon review, Popular informed Plaintiff that although he was not currently in the office, he would resolve the situation on Monday morning.

57.   Plaintiff further informed Popular of the discriminatory fashion in which the Internal Affairs investigation was handled.

58.   Plaintiff explained that her firearm was taken at the commencement of the Internal Affairs investigation whereas investigations into white male officers never resulted in them being relieved of their firearm.

59.   Plaintiff further informed Popular that white male officers were generally permitted to remain on full duty whereas Plaintiff was immediately placed on restricted duty, removed from her assigned unit, and never brought back despite the conclusion of the investigation.

60.   Popular responded to Plaintiff's complaint by asking, "Did you ever receive a letter from Municipal Police Officers Education and Training Commission (MPOETC).

61.   Plaintiff responded, "No I did not receive anything."

62.   Popular assured Plaintiff that he would remedy the situation upon his return to the office on Monday.

63.   In or around March 2022, Plaintiff received her service firearm.

64.   To date, Plaintiff has not received any communications from Popular regarding her report of discrimination.

### COUNT I
### Disparate Treatment in Violation of
### Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.
### (*Plaintiff v. Defendant City of Philadelphia*)

65.   Plaintiff incorporates by reference and realleges every allegation in this Complaint as if fully set forth herein at length.

66. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 provides in relevant part:

    a. "It shall be unlawful employment practice for an employer (1) to fail or refuse to hire or discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) limit, segregate, or classify his employees or applicants for employment in any wat which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

42 U.S.C. § 2000e-2

67. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(d) further provides that "it shall be an unlawful employment practice for an employer… controlling… training or retraining, including on-the-job training programs to discriminate against any individual because of [her] race, color, religion, sex, or national origin in admission to, or employment in, any program established to provide training."

68. THE CITY engaged in unlawful employment practices prohibited by Title VII by intentionally discriminating against Plaintiff with respect to their compensation, terms, conditions, training, and privileges of employment because of their race, color, and sex.

69. THE CITY subjected Plaintiff to adverse tangible employment actions – defined as significant changes in Plaintiff's employment status, discipline, denial of training, failure to promote, reassignment with significantly different job responsibilities, and decisions causing significant changes in their employment benefits.

70. At all times material, Plaintiff was and is an African American woman.

71. At all times material THE CITY had knowledge of Plaintiff's race and color

72. At all times material, PPD held supervisory authority over Plaintiff with respect to her employment.

73. At all times material, THE CITY authorized PPD to take tangible employment action against Plaintiff as an employee of THE CITY.

74. As alleged herein, PPD, in their capacity as Plaintiff's supervisor, intentionally discriminated against Plaintiff with regard to the terms and conditions of her employment on the basis Plaintiff's race, color, and sex.

75. At all times material, PPD's discriminatory conduct was not welcomed by Plaintiff.

76. At all times material, PPD's conduct towards Plaintiff was intentionally based upon Plaintiff's race, color, and sex.

77. On or around January 5, 2018, Plaintiff's firearm was taken.

78. At all times material, Plaintiff's race, color, and sex were the motivating and/or determinative factors in PPD's decision to relieve Plaintiff of her firearm.

79. THE CITY cannot show any legitimate, nondiscriminatory reasons for its employment practices and any reasons proffered by THE CITY for its actions against Plaintiff are pretextual and can be readily disbelieved.

80. As alleged herein, PPD's discriminatory and harassing actions towards Plaintiff because of her race, color, and sex are unlawful employment practices in violation of the Civil Rights Act of 1964.

81. PPD's unlawful employment actions towards Plaintiff were intentional, willful, and made with reckless indifference to Plaintiff's federally protected civil rights.

82. Defendants acted upon a continuing course of conduct.

83. THE CITY is vicariously liable for the unlawful employment actions by PPD against Plaintiff in the course and scope of PPD's employment with THE CITY.

84. As a result of PPD's unlawful discrimination against Plaintiff in violation of Title VII, Plaintiff has suffered and continues to suffer emotional and financial harm.


## COUNT II
### Hostile Work Environment In Violation of
### Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*
### (*Plaintiff v. Defendant City of Philadelphia*)

86. Plaintiff incorporates by reference and realleges every allegation in this Complaint as if fully set forth herein at length.

87. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 provides in relevant part:

   a. "It shall be unlawful employment practice for an employer (1) to fail or refuse to hire or discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) limit, segregate, or classify his employees or applicants for employment in any wat which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

42 U.S.C. § 2000e-2

88. Title VII also prohibits hostile work environment harassment, defined as unwanted comments or conduct regarding the Plaintiff's protected characteristics that have the purpose or effect of unreasonably interfering with the terms and conditions of the Plaintiff's employment. *Harris v. Forklift Systems*, 510 U.S. 17, 21 (1993).

89. PPD, in its capacity as Plaintiff's supervisor, intentionally discriminated against Plaintiff in the terms and conditions of her employment on the basis of Plaintiff's race and/or color.

90. THE CITY delegated to PPD the authority to control Plaintiff's work environment, and PPD abused that authority to create a hostile work environment.

91. At all times material, PPD's intentional, racially motivated discrimination was not welcomed by Plaintiff.

92. At all times material, the intentional, race-based discrimination by PPD was so severe or pervasive that a reasonable person in Plaintiff's position would find Plaintiff's work environment to be hostile or abusive.

93. At all times material, Plaintiff believed her work environment to be hostile or abusive as a result of PPD's racially discriminatory conduct.

94. The hostile work environment alleged herein unreasonably interfered with Plaintiff's work performance.

95. The hostile work environment alleged herein was so extreme that it resulted in material changes to the terms and conditions of Plaintiff's employment.

96. THE CITY provided a futile avenue for complaint.

97. THE CITY retaliated against Plaintiff for her complaints.

98. THE CITY acted upon a continuing course of conduct.

99. THE CITY's unlawful actions towards Plaintiff were intentional, willful, and made with reckless indifference to Plaintiff's federally protected civil rights.

100. As a result of THE CITY's violations of Title VII, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**COUNT III**
**Unlawful Retaliation in Violation of**
**Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e,** *et seq.*
*(Plaintiff v. Defendant City of Philadelphia)*

101. Plaintiff incorporates by reference and realleges every allegation in this Complaint as if fully set forth herein at length.

102. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides that it shall be an unlawful employment practice for an employer "(1) to . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

103. As alleged herein, Plaintiff engaged in protected activity under Title VII including, but not limited to raising formal and informal complaints opposing PPD's discriminatory employment practices.

104. At all times material, Plaintiff acted under a good faith belief that her right to be free from unlawful discrimination in the workplace was violated.

105. Plaintiff was subjected to materially adverse actions at the time or after the protected conduct took place.

106. Plaintiff's protected activity was the motivating and/or determinative factor in the City's decision to take materially adverse action against Plaintiff.

107. Plaintiff's protected activity was the but-for cause of the City's decision to take materially adverse action against Plaintiff.

108. THE CITY acted upon a continuing course of conduct.

109. THE CITY's unlawful actions towards Plaintiff were intentional, willful, and made with reckless indifference to Plaintiff's federally protected civil rights.

110. THE CITY's action to take materially adverse action against Plaintiff in retaliation for Plaintiff's prior protected activity is an unlawful employment practice in violation of Title VII of the Civil Rights Act of 1964.

111. As a result of THE CITY's violations of Title VII, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**COUNT IV**
**Unlawful Race Discrimination**
**42 U.S.C. § 1981 (Section 1981)**
**(*Plaintiff v. All Defendants*)**

112. Plaintiff incorporates by reference and realleges every allegation in this Complaint as if fully set forth herein at length.

113. 42 U.S.C § 1981 provides, in pertinent part: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981(a).

114. Section 1981's prohibition against racial discrimination in the making and enforcement of contracts provides a cause of action to remedy race discrimination in the employment context.

115. The Third Circuit has recognized that § 1981 provides a cause of action for hostile work environment and the standards for a hostile work environment clam are identical under Title VII and § 1981. See, e.g., Ocasio v. Leigh Valley Family Health Center, 92 Fed. Appx 876,

879-80 (3d Cir. 2004) ("As amended by the 1991 Civil Rights Act, § 1981 now encompasses hostile work environment claims, and we apply the same standards as in a similar Title VII claim.").

116. At all times material, Plaintiff and Defendant City of Philadelphia were in an employment relationship entitled to the protections of 42 U.S.C. § 1981.

117. At all times material, Plaintiff's race was and is African American/Black.

118. At all times material, Defendants had knowledge of Plaintiff's race.

119. PPD, in their capacity as Plaintiff's supervisor, intentionally discriminated against Plaintiff in the terms and conditions of her employment on the basis of Plaintiff's race and/or color.

120. Defendants violated Section 1981 by intentionally discriminating against Plaintiff in a serious tangible way with respect to her compensation, terms, conditions, or privileges of employment.

121. Plaintiff's race was a determinative or motivating factor in Defendants' employment actions.

122. Defendants cannot show any legitimate nondiscriminatory reason for their employment practices and any reasons proffered by the Defendants for their actions against Plaintiff are pretextual and can readily be disbelieved.

123. Plaintiff's protected status played a motivating part in the Defendants' decisions even if other factors may also have motivated Defendants' actions against Plaintiff.

124. Defendants acted with the intent to discriminate.

125. Defendants acted upon a continuing course of conduct.

126. Defendants acted with malice or reckless indifference to Plaintiff's federally protected rights and as a result there should be an award of punitive damages against Defendants.

127. Defendant City of Philadelphia is vicariously liable for the unlawful actions of PPD against Plaintiff in the course and scope of PPD's employment with THE CITY.

128. Defendants' unlawful actions towards Plaintiff were intentional, willful, and made with reckless indifference to Plaintiff's federally protected civil rights.

129. As a result of Defendants' violations of Section 1981, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

## COUNT V
### Racially Hostile Work Environment
### In Violation of 42 U.S.C. § 1981
### *(Plaintiff v. All Defendants)*

130. Plaintiff incorporates by reference and realleges every allegation in this Complaint as if fully set forth herein at length.

131. 42 U.S.C § 1981 provides, in pertinent part: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981(a).

132. Section 1981's prohibition against racial discrimination in the making and enforcement of contracts provides a cause of action to remedy race discrimination in the employment context.

133. The Third Circuit has recognized that § 1981 provides a cause of action for hostile work environment and the standards for a hostile work environment clam are identical under Title

VII and § 1981. *See, e.g., Ocasio v. Leigh Valley Family Health Center,* 92 Fed. Appx 876, 879-80 (3d Cir. 2004) ("As amended by the 1991 Civil Rights Act, § 1981 now encompasses hostile work environment claims, and we apply the same standards as in a similar Title VII claim.").

134. At all times material, Plaintiff and Defendant City of Philadelphia were in an employment relationship entitled to the protections of 42 U.S.C. § 1981.

135. At all times material, Plaintiff's race was and is African American/Black.

136. At all times material, Defendants had knowledge of Plaintiff's race.

137. PPD, in their capacity as Plaintiff's supervisor, intentionally discriminated against Plaintiff in the terms and conditions of her employment on the basis of Plaintiff's race and/or color.

138. THE CITY delegated to PPD the authority to control Plaintiff's work environment, and PPD abused that authority to create a hostile work environment.

139. At all times material, PPD's intentional, racially motivated discrimination was not welcomed by Plaintiff.

140. At all times material, the intentional, race-based discrimination by PPD was so severe or pervasive that a reasonable person in Plaintiff's position would find Plaintiff's work environment to be hostile or abusive.

141. At all times material, Plaintiff believed her work environment to be hostile or abusive as a result of PPD's racially discriminatory conduct.

142. The hostile work environment alleged herein unreasonably interfered with Plaintiff's work performance.

143. The hostile work environment alleged herein was so extreme that it resulted in material changes to the terms and conditions of Plaintiff's employment.

144. THE CITY provided a futile avenue for complaint.

145. THE CITY retaliated against Plaintiff for her complaints.

146. THE CITY acted upon a continuing course of conduct.

147. Defendants' unlawful actions towards Plaintiff were intentional, willful, and made with reckless indifference to Plaintiff's federally protected civil rights.

148. Defendants failed to exercise reasonable care to prevent racial harassment in the workplace by failing to establish an explicit policy against harassment in the workplace on the basis of race, failing to fully communicate the policy to its employees, failing to provide a reasonable way for Plaintiff to make a claim of harassment to higher management, and failing to take reasonable steps to promptly correct the harassing behavior raised by Plaintiff.

149. Defendants acted upon a continuing course of conduct.

150. As a result of Defendants' violations of Section 1981, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

### COUNT VI
**Unlawful Retaliation**
**In Violation of 42 U.S.C. § 1981**
***(Plaintiff v. All Defendants)***

151. Plaintiff incorporates by reference and realleges every allegation in this Complaint as if fully set forth herein at length.

152. The United States Supreme Court has held that retaliation claims are cognizable under § 1981. *CBOCS West, Inc. v. Humphries,* 553 U.S. 442 (2008).

153. As alleged herein, Plaintiff engaged in protected activity under Section 1981 including, but not limited to raising informal complaints opposing PPD's discriminatory employment practices.

154. At all times material, Plaintiff acted under a good faith belief that her right to be free from unlawful discrimination in the workplace was violated.

155. Plaintiff was subjected to materially adverse actions at the time or after the protected conduct took place.

156. Plaintiff's protected activity was the motivating and/or determinative factor in the Defendants' decision to take materially adverse action against Plaintiff.

157. Plaintiff's protected activity was the but-for cause of Defendants' decision to take materially adverse action against Plaintiff.

158. Defendants acted upon a continuing course of conduct.

159. Defendants' unlawful actions towards Plaintiff were intentional, willful, and made with reckless indifference to Plaintiff's federally protected civil rights.

160. The City's action to take materially adverse action against Plaintiff in retaliation for Plaintiff's prior protected activity is an unlawful employment practice in violation of Section 1981.

161. PPD is individually liable for unlawful employment practices against Plaintiff in violation of 42 U.S.C. § 1981.

162. THE CITY is vicariously liable for the unlawful actions of PPD against Plaintiff in the course and scope of PPD's employment with the City.

163. As a result of the Defendants' violations of Section 1981, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience,

mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**COUNT VII**
**Disparate Treatment in Violation of**
**42 U.S.C. § 1983 (Section 1983)**
**(*Plaintiff v. All Defendants*)**

164. Plaintiff incorporates by reference and realleges every allegation in this Complaint as if fully set forth herein at length.

165. The Fourteenth Amendment to the United States Constitution protects persons from being subjected to discrimination, by persons acting under color of state law, on the basis of a protected class (e.g., sex, race, color). U.S. Const. amend. XIV.

166. Section 1983 provides:

    a.  "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other persons within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress, except that in any action taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

42 U.S.C. § 1983.

167. Section 1983 provides a cause of action for unconstitutional employment discrimination by both employers and individuals, so long as the Plaintiff shows that the Defendant acted under

color of state law. See Fitzgerald v. Barnstable School Committee, 129 S. Ct. 788, 796 (2009).

168. "[M]unicipalities and other local government units [are] included among those persons to whom § 1983 applies." *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690 (1978). However, "a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Id*. at 691. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id*. at 694.

169. THE CITY violated Section 1983 by intentionally discriminating against Plaintiff in a serious tangible way with respect to their compensation, terms, conditions, or privileges of employment.

170. Plaintiff's protected characteristics (sex, race, and color) were a determinative or motivating factor in THE CITY's decision to take tangible employment action.

171. THE CITY cannot articulate a legitimate, non-discriminatory reason for their employment practices and any reasons proffered by THE CITY for their actions against Plaintiff are pretextual and can be readily disbelieved.

172. Plaintiff's protected status played a motivating part in the Defendants' decisions even if other factors may also have motivated Defendants' actions against Plaintiff.

173. Defendants acted under color of state law.

174. Defendants acted upon a continuing course of conduct.

175. Moreover, this case unquestionably involves official policy: the City, the PPD, and their policymaking officials (1) directed that the violations occur; (2) authorized the violations;

(3) agreed to subordinates' decisions to engage in the violations; (4) provided inadequate training; (5) provided inadequate supervision; and (6) failed to adopt needed policies to prevent the violations.

176. Defendants acted with malice or reckless indifference to Plaintiff's federally protected rights and as a result there should be an award of punitive damages against Defendants.

177. As a result of Defendant's violations of Plaintiff's Equal Protection rights, Plaintiffs have suffered damages, including but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**COUNT VIII**
**Hostile Work Environment**
**In Violation of 42 U.S.C. § 1983**
***(Plaintiff v. All Defendants)***

178. Plaintiff incorporates by reference and realleges every allegation in this Complaint as if fully set forth herein at length.

179. At all times material, Plaintiff's race was and is African American/Black.

180. At all times material, Defendants had knowledge of Plaintiff's race.

181. PPD, in their capacity as Plaintiff's supervisor, intentionally discriminated against Plaintiff in the terms and conditions of her employment on the basis of Plaintiff's race and/or color.

182. THE CITY delegated to PPD the authority to control Plaintiff's work environment, and PPD abused that authority to create a hostile work environment.

183. At all times material, PPD's intentional, racially motivated discrimination was not welcomed by Plaintiff.

184. At all times material, the intentional, race-based discrimination by PPD was so severe or pervasive that a reasonable person in Plaintiff's position would find Plaintiff's work environment to be hostile or abusive.

185. At all times material, Plaintiff believed her work environment to be hostile or abusive as a result of PPD's racially discriminatory conduct.

186. The hostile work environment alleged herein unreasonably interfered with Plaintiff's work performance.

187. The hostile work environment alleged herein was so extreme that it resulted in material changes to the terms and conditions of Plaintiff's employment.

188. Defendants acted under the color of state law.

189. Defendants violated Section 1983 by intentionally discriminating against Plaintiff on the basis of her race/color sufficient to create a hostile work environment.

190. Defendants' unlawful actions towards Plaintiff were intentional, willful, and made with reckless indifference to Plaintiff's federally protected civil rights.

191. Defendants failed to exercise reasonable care to prevent racial harassment in the workplace by failing to establish an explicit policy against harassment in the workplace on the basis of race, failing to fully communicate the policy to its employees, failing to provide a reasonable way for Plaintiff to make a claim of harassment to higher management, and failing to take reasonable steps to promptly correct the harassing behavior raised by Plaintiff.

192. Defendants acted upon a continuing course of conduct.

193. As a result of Defendants' violations of Plaintiff's Equal Protection rights, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional

distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

## COUNT IX
### Retaliation In Violation
### of 42 U.S.C. § 1983
### (*Plaintiff v. All Defendants*)

194. Plaintiff incorporates by reference and realleges every allegation in this Complaint as if fully set forth herein at length.

195. The First Amendment gives persons the right to petition the Government for a redress of grievances. U.S. Const. amend. I.

196. "[R]etaliation by a government employer for a public employee's exercise of the right of access to the courts may implicate the protections of the Petition Clause." *Borough of Duryea v. Guarnieri*, 131 S. Ct. 2488, 2494 (2011); *see also Mack v. Warden Loretto FCI*, 839 F.3d 286 (3d Cir. 2016) (holding that an inmate's oral grievance is protected under the Petition Clause).

197. Defendants took materially adverse employment actions against Plaintiff for engaging in protected activity.

198. Plaintiff's protected activity was a substantial or motivating factor in Defendants' decisions.

199. Defendants cannot show any legitimate nondiscriminatory reason for its employment practices and any reasons proffered by Defendants for their actions against Plaintiff are pretextual and can readily be disbelieved.

200. Defendants acted upon a continuing course of conduct.

201. Moreover, this case unquestionably involves official policy: the City, the PPD, and their policymaking officials (1) directed that the violations occur; (2) authorized the violations; (3) agreed to subordinates' decisions to engage in the violations; (4) provided inadequate training; (5) provided inadequate supervision; and (6) failed to adopt needed policies to prevent the violations.

202. Defendants acted with malice or reckless indifference to Plaintiff's federally protected rights and as a result there should be an award of punitive damages against Defendants.

203. As a result of Defendants' violations of Plaintiff's Free Speech rights, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

## COUNT X
**Disparate Treatment in Violation of
Philadelphia Code Fair Practices Ordinances, PCFO § 9-1103**
*(Plaintiff v. Defendant Silver Stream Nursing and Rehabilitation, LLC)*

204. Plaintiff hereby incorporates all allegations contained in the above paragraphs as fully as if they were set forth at length.

205. PCFO § 9-1103(1)(a) provides that it shall be an unlawful employment practice:

a. "To deny or interfere with the employment opportunities of an individual based upon his or her race, ethnicity, color, sex (including pregnancy, childbirth, or a related medical condition), sexual orientation, gender identity, religion, national origin, ancestry, age, disability, marital status, familial status, genetic information, or domestic or sexual violence victim status, including, but not limited to, the following:

i.   (a)   For any employer to refuse to hire, discharge, or otherwise discriminate against any individual, with respect to tenure, promotions, terms, conditions or privileges of employment or with respect to any matter directly or indirectly related to employment.

206.   Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of her sex and gender with respect to the terms and conditions of her employment.

207.   At all times material, Defendant acted with intent to discriminate.

208.   At all times material, Defendant acted upon a continuing course of conduct.

209.   As a result of the Defendant's violations of the Philadelphia Code Fair Practice Ordinance, Plaintiff has suffered damages including, but not limited to; past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.


## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against the named Defendants, in an amount to be determined at the time of trial plus interest, including but not limited to all emotional distress and lost wages, punitive damages, liquidated damages, statutory damages, attorneys' fees, costs, interest and disbursements of action, and for all other relief available under the law or at equity.

**<u>JURY DEMAND</u>**

Plaintiff demands a trial by jury as to all issues so triable.

Date: July 26, 2022                              **DEREK SMITH LAW GROUP, PLLC**

By: _____
                                   Scott E. Diamond, Esq.
                                   **The Derek Smith Law Group, PLLC**
                                   1835 Market Street, Suite 2950
                                   Philadelphia, PA 19103