# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EYLEEN ARCHIE** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | **NO. 22-2915** |
| **v.** | : | |
| | : | |
| **CITY OF PHILADELPHIA,** *et al.* | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                   JANUARY 16, 2025

# MEMORANDUM OPINION

## INTRODUCTION

Plaintiff Eyleen Archie ("Plaintiff") filed this employment action against Defendants City of Philadelphia (the "City"), Deputy Commissioner Christine M. Coulter ("Defendant Coulter"), and Captain Maria Ortiz-Rodriguez ("Defendant Ortiz-Rodriguez") (collectively, "Defendants"), asserting claims of unlawful discrimination and retaliation in violation of various statutes; *to wit*: Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* (Counts I and II of the Amended Complaint); 42 U.S.C § 1981 (Counts III and IV of the Amended Complaint); 42 U.S.C § 1983 (Counts V and VI of the Amended Complaint); and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 951 *et seq.* (Count VII of the Amended Complaint). Specifically, Plaintiff asserts that Defendants discriminated against her based on her race, gender, color, association with a disabled child, and in retaliation for her prior protected Equal Employment Opportunity ("EEO") activities and First Amendment speech made as a public employee.

Presently, before this Court is the City's motion for summary judgment[1] filed pursuant to Federal Rule of Civil Procedure ("Rule") 56. (ECF 50). Plaintiff opposes the motion. (ECF 51). The issues presented in the City's motion are fully briefed and are ripe for disposition. For the reasons set forth herein, the City's motion for summary judgment is granted as to the following claims in the Amended Complaint: Plaintiff's discrimination claims brought under Title VII (Count I), § 1981 (Count III), § 1983 (Count V), and the PHRA (Count VII), and her retaliation claims brought under Title VII (Count II), § 1981 (Count IV), and the PHRA (Count VII). The City's motion for summary judgment is denied as to Plaintiff's First Amendment retaliation § 1983 claim at Count VI of the Amended Complaint.

## BACKGROUND

When ruling on a motion for summary judgment, a court must consider all record evidence and the supported relevant facts in the light most favorable to the non-movant — here, Plaintiff. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Justofin v. Metro. Life Ins. Co.*, 372 F.3d 517, 521 (3d Cir. 2004), *as amended* (Aug. 12, 2004). The facts relevant to the underlying motion are summarized as follows:[2]

> Plaintiff is an African American female police officer employed by the Philadelphia Police Department ("Police Department") for seventeen years. Plaintiff remains employed by the Police Department as a police officer. Plaintiff is the mother of four children, one of whom suffers from a health condition. Because of this condition, the child is required to attend medical daycare from 7:00 A.M. to 3:30 P.M.

---

[1] Defendant Ortiz-Rodriguez filed her own motion for summary judgment, (*see* ECF 52), which this Court will address in a separate Memorandum Opinion.

As to Deputy Commissioner Christine M. Coulter, Plaintiff contends that there is limited evidence of Defendant Coulter's involvement and does not oppose dismissing her from the litigation. (*See* Pl.'s Opp., ECF 51-2, at p. 19). Accordingly, all claims against Defendant Coulter are dismissed.

[2] These facts are taken from the parties' briefs, exhibits, and statements of facts. To the extent that any fact is disputed, such dispute will be noted and, if material and supported by record evidence, will be construed in Plaintiff's favor.

On January 5, 2018, upon allegations of child abuse against Plaintiff made by one of Plaintiff's children, the City detailed Plaintiff from her assignment of the Court Liaison Unit to the Delaware Valley Intelligence Center ("DVIC"). This detail is deemed a temporary and involuntary transfer. As part of this transfer, the City confiscated Plaintiff's firearm and placed her on restricted duty.

While the child abuse investigation was pending, Plaintiff reached out to former police officer Andre Boyer ("Boyer") to obtain information about who was handling her child abuse case. Boyer ran a social media page called Serpico News, purportedly to expose corruption within the Police Department, and agreed to help Plaintiff. In return, Boyer asked for Plaintiff's assistance in taking a photograph of a police officer who Boyer believed was stealing time. Plaintiff did as Boyer asked. As a result, she was involuntarily detailed on September 27, 2018, this time to the Auto Pound allegedly as punishment.

When Plaintiff returned from maternity leave sometime in May 2019, Plaintiff was detailed multiple times before being assigned to the 26th District, where she continues to work.

Under Police Department policy, police officers placed on restricted duty and without a firearm are unable to utilize the firing range to complete their annual certifications but may complete Municipal Police Officer ("MPO") classes. Plaintiff did not have her firearm from January 5, 2018, to April 16, 2021. In May 2021, Plaintiff went to the firing range for her firearm qualifications and passed. The Firearms Training Bureau within the Police Department told Plaintiff to go to Harrisburg to reobtain her firearm. Plaintiff went to Harrisburg on her own time but was not able to get her firearm. The Police Department returned her firearm in March 2022.

In 2021, Plaintiff submitted a hardship request in which she sought permission to change her work shift schedule from 10:00 P.M. to 6:15 A.M to the earlier work shift of 6:30 A.M. to 2:30 P.M. to care for her disabled child. Captain William Fischer, who then served as the captain for the 26th District, approved Plaintiff's hardship request and authorized it until June 2022. On December 21, 2021, Defendant Ortiz-Rodriguez, a Hispanic police officer, replaced Captain Fisher as captain for the 26th District. In February 2022, Defendant Ortiz-Rodriguez orally advised Plaintiff that she would deny her next hardship request.[3]

Despite the advanced verbal denial, Plaintiff submitted another hardship request on February 25, 2022, to Administrative Lieutenant James DeAngelo ("DeAngelo"), who approved the request and passed it on to Defendant Ortiz-Rodriguez, who told him to deny it. DeAngelo refused to follow Defendant Ortiz-Rodriguez' directive as he believed he did not have the discretion to deny the hardship request. Plaintiff's request mysteriously went missing and, coincidentally, DeAngelo was demoted to line squad. Plaintiff resubmitted her hardship request

---

[3]     The parties dispute the reason why Plaintiff's subsequent hardship request was denied.

on March 15, 2022, which was denied by Defendant Ortiz-Rodriguez.  Following the denial of her hardship request, Plaintiff asserts that she observed Officer Lauren Alicia, a Hispanic line squad officer in the 26th District, being accommodated so that she could assist her sick father.[4]

Sometime later, Defendant Ortiz-Rodriguez issued Plaintiff a 30-Day Notification of Reassignment, which would have reassigned her to 3-Squad and the overnight shift.  The reassignment was scheduled to go into effect on the first day following the expiration of Plaintiff's previously approved hardship request authorized in 2021.

Just prior to when Plaintiff's hardship request was to expire, an EEO complaint was submitted on her behalf,[5] which prevented the reassignment from going into effect.  The EEO complaint submitted on behalf of Plaintiff led to an internal EEO investigation which found that Defendant Ortiz-Rodriguez had denied Plaintiff's hardship request without "reasonable justification."  The investigation also found that the number of Hispanic officers in 5-Squad was "disproportionate" to the number of African American officers.[6]

After Defendant Ortiz-Rodriguez denied Plaintiff's hardship request in March 2022, Plaintiff was assigned "crappy cars" to drive while on the job.  Defendant Ortiz-Rodriguez told Plaintiff that the nicer cars were reserved for the captain's tactical team and for community relations work.  However, Plaintiff testified that the nicer cars went to Hispanic officers.

## LEGAL STANDARD

Rule 56 governs summary judgment motion practice.  Fed. R. Civ. P. 56.  Specifically, this Rule provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Id.*  A fact is "material" if proof of its existence or non-existence might affect the outcome of the

---

[4]     It is unclear whether Lauren Alicia had written approval or submitted a hardship request for the accommodation.

[5]     It is also unclear from the record who filed the EEO complaint.  Lieutenant Brent Conway, the City's EEO investigator, testified that either Plaintiff or DeAngelo filed the complaint.  However, Plaintiff denies that she filed the EEO complaint and DeAngelo testified that he filed some type of complaint after Defendant Ortiz-Rodriguez denied Plaintiff's hardship request.

[6]     Notably, the cited record does not provide the ratio of African American officers to Hispanic officers.

litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When evaluating a motion under Rule 56, the court must view the evidence in the light most favorable to the nonmoving party. *Justofin*, 372 F.3d at 521.

Pursuant to Rule 56, the movant bears the initial burden of informing the court of the basis for the motion and identifying those portions of the record that the movant "believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden can be met by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." *Id.* at 322. After the movant has met its initial burden, summary judgment is appropriate if the nonmoving party fails to rebut the movant's claim by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" that show a genuine issue of material fact or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A)-(B). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party may not rely on "bare assertions, conclusory allegations or suspicions," *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982), or rest on the allegations in the pleadings, *Celotex*, 477 U.S. at 324. Rather, the nonmoving party must "go beyond the pleadings" and, either by affidavits, depositions, answers to interrogatories, or admissions on file, "designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324.

**DISCUSSION**

As noted, Plaintiff asserts that the City violated Title VII, § 1981, § 1983, and the PHRA by discriminating against her based on her race, gender, color, and association with a disabled child, and retaliated against her for prior protected EEO activities and First Amendment speech made as a public employee.  The City moves for summary judgment on these claims arguing that Plaintiff has failed to present evidence sufficient to meet her burden with respect to the *prima facie* elements of her claims and/or as to pretext.  Each claim will be addressed separately.

### *Plaintiff's Discrimination Claims under § 1981*

Section 1981(a) provides that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).

The City moves for summary judgment on this claim arguing that § 1981 does not provide a private right of action against state actors.  Plaintiff concedes this point.  (*See* Pl.'s Opp., ECF 51-2, at p. 19). Regardless, this Court agrees with the City.  *See McGovern v. City of Philadelphia*, 554 F.3d 114, 120-21 (3d Cir. 2009) (holding that § 1981 does not provide a private cause of action against a state actor).  Accordingly, judgment is entered in favor of the City and against Plaintiff on her claims of discrimination and retaliation brought under § 1981 at Counts III and IV of Plaintiff's Amended Complaint.

***Plaintiff's Discrimination Claims Under Title VII, § 1983, and the PHRA***

Plaintiff alleges that the City unlawfully discriminated against her in violation of Title VII,[7]

§ 1983,[8] and the PHRA.[9]   Claims arising under these statutes are subject to the burden-shifting

framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Stewart v.*

*Rutgers, The State Univ.*, 120 F.3d 426, 432 (3d Cir. 1997) ("Our application of the [*McDonnell*

*Douglas*] framework is applicable to Stewart's allegation of racial discrimination under 42 U.S.C.

§§ 1981 and 1983."); *Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 410 (3d Cir. 1999)

(applying the *McDonnell Douglas* standard to PHRA claims).

Under the *McDonnell Douglas* framework, "[t]he complainant . . . must carry the initial

burden under the statute of establishing *a prima facie* case of . . . discrimination."  411 U.S. at 802.

To maintain a viable claim under either Title VII, § 1983, and/or the PHRA, a plaintiff must present

evidence to show, *inter alia*, that the plaintiff:  (1) "is a member of a protected class; (2) was

qualified for the position which she held; (3) suffered an adverse employment action which was

(4) taken under circumstances giving rise to an inference of discrimination."  *Emerson v. Stern &*

*Eisenberg, P.C.*, 2022 WL 10208548, at *4 (E.D. Pa. Oct. 17, 2022).  Once a plaintiff establishes

a *prima facie* case of discrimination, the burden shifts to the defendant "to articulate some

legitimate, nondiscriminatory reason" for the adverse employment action.  *McDonnell Douglas*,

---

[7]     Title VII, as amended, makes it unlawful to "discriminate against any individual with respect to his
compensation, terms, conditions, or privileges of employment, because of such individual's race, color,
religion, sex, or national origin . . . ."  42 U.S.C. § 2000e-2(a)(1).

[8]     Section 1983 provides in part, "Every person who, under color of any statute, ordinance, regulation,
custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected,
any citizen of the United States or other persons within the jurisdiction thereof to the deprivation of any
rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party . . . ."  42
U.S.C. § 1983.

[9]     The PHRA prohibits "discrimination against individuals or groups by reason of their race, color,
familial status, religious creed, ancestry, age, sex, national origin, handicap or disability . . . ."  43 Pa Cons.
Stat. § 952(a).

411 U.S. at 802.  If the defendant satisfies this step, the burden shifts back to the plaintiff to show that the legitimate nondiscriminatory reason proffered by the defendant is merely a pretext for discrimination.  *Fuentes v. Perskie*, 32 F.3d 759, 804-05 (3d Cir. 1994).

Here, the City argues *only* that Plaintiff has failed to meet the third and fourth *prima facie* elements by having failed to present evidence sufficient to show that she suffered an adverse employment action which was taken under circumstances giving rise to an inference of discrimination.[10]  The City also argues that even if this Court finds that Plaintiff suffered an adverse employment action, the City had legitimate non-discriminatory reasons for taking those actions and Plaintiff is unable to show that the City's proffered reasons were merely pretext.  Plaintiff disagrees.

1.  *Adverse Employment Actions*

The United States Court of Appeals for the Third Circuit (the "Third Circuit") has defined an "adverse employment action" "as an action by an employer that is 'serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'"  *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004) (citation omitted).  "Tangible employment actions are those that create a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'"  *Larochelle v. Wilmac Corp.*, 210 F. Supp. 3d 658, 696 (E.D. Pa. 2016) (quoting *Vance v. Ball State Univ.*, 570 U.S. 421, 431 (2013)).  When an employee's salary, reporting requirements, and general duties remain the same, there is typically insufficient

---

[10]     Because the City does not move for summary judgment on the first two elements of *McDonnell Douglas* to show a *prima facie* case of discrimination — that Plaintiff is a member of a protected class, and that Plaintiff was qualified — this Court will presume at this stage that these elements are met for purposes of Plaintiff's *prima facie* discrimination case.

evidence of an adverse employment action. *Fiorentini v. William Penn Sch. Dist.*, 665 F. App'x 229, 234-35 (3d Cir. Dec. 16, 2016).

Here, Plaintiff contends that she suffered the following adverse employment actions: (1) the denial of her hardship request; (2) the assignment to the worst police vehicles; (3) a demotion, less desirable transfer, and the removal of responsibilities; and (4) restricted duty and the loss of her firearm. (*See* Pl.'s Opp., ECF 51-2, at p. 4). The City disagrees and argues that none of these purported actions, singularly or in combination, constitute actionable adverse employment actions. These arguments are addressed in turn.

### *The Denial of Plaintiff's Hardship Request*

Plaintiff's hardship request for a change in her hours, if granted, would have changed her hours to 6:30 A.M. to 2:30 P.M. (March 15, 2022 Hardship Request, ECF 51-15, at p. 2). This hardship request is akin to a shift change, which generally is not deemed an adverse employment action. *See Friel v. Mnuchin*, 474 F. Supp. 3d 673, 686 (E.D. Pa. 2020), *aff'd*, 2021 WL 6124314 (3d Cir. Dec. 28, 2021) (finding that shift change requests were not adverse employment actions because they did not affect the terms and conditions of employment); *Washington v. SEPTA*, 2021 WL 2649146, at *21 (E.D. Pa. June 28, 2021) (same). Plaintiff has not contended that the terms and conditions of her employment changed at any time despite the denial of her hardship requests. As such, the denial of Plaintiff's shift change request is not an actionable adverse employment action.

Nonetheless, Plaintiff cites to *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296 (3d Cir. 1999) in support of her contention that a denial of a hardship request is an adverse employment action. Plaintiff's reliance, however, is misplaced. The Third Circuit's decision in *Taylor* is inapposite as it involved a failure to authorize a transfer request to a different position as opposed to a change

in shift request, which is what Plaintiff had requested.  Under the circumstances present herein, Plaintiff has not shown that the denial of her hardship request (a shift change) is an adverse employment action.  Accordingly, the City's motion is granted with respect to all claims premised on the denial of Plaintiff's hardship request.

<em>Assignment of the Worst Vehicles</em>

Plaintiff also contends that her assignment to the worst police vehicles in the pool constitutes an adverse employment action.  Plaintiff baldly asserts that "[a]n assignment to the worst patrol vehicles *can* be an adverse employment action since it limits the ability to perform the job and *can* prevent an individual from advancing in his or her career."  (Pl.'s Opp., ECF 51-2, at p. 7) (emphasis added).  In support, Plaintiff cites to *King v. City of New Kensington*, 2008 WL 4492503 (W.D. Pa. Sept. 30, 2008).  In *King*, the court found that an assignment of the worst police vehicles "***might*** be an adverse employment action, since it ***might*** limit [the plaintiff's] ability to perform her job and prevent her from advancing in her law enforcement career."  *Id.* at *11 (emphasis added).  However, numerous courts have found that assignment to the worst vehicles is not an adverse employment action.  *See Virostek v. Liberty Twp. Police Dep't/Trustees*, 14 F. App'x 493, 504 (6th Cir. 2001); *Clark v. City of Alexandria*, 2022 WL 18144872, at *6 (W.D. La. Dec. 9, 2022), *report and recommendation adopted*, 2023 WL 122971 (W.D. La. Jan. 6, 2023); *Jones v. City of Jackson*, 335 F. Supp. 2d 865, 870 (W.D. Tenn. 2003); *Sierra v. City of Albuquerque*, 2008 WL 11412098, at *8 (D.N.M. Sept. 11, 2008).  In *Jones*, the plaintiff failed to provide evidence of how being denied a quality patrol car created a "materially adverse change in the terms or conditions of plaintiff's employment . . . ."  *Jones*, 335 F. Supp. 2d at 870.  Likewise, Plaintiff fails to provide evidence of the same.  As such, this Court finds these decisions more persuasive and incorporates their reasoning herein.

Accordingly, this Court finds in this case that Plaintiff's assignment to the worst vehicles does not constitute an adverse employment action. Consequently, because Plaintiff has failed to meet her burden of showing that the assignment of her vehicles was an adverse employment action, the City's motion for summary judgment is granted with respect to this claim.

*Demotion*

Plaintiff next contends that her transfer to a different squad (the "3-Squad") constituted an adverse action in that it was a demotion to a less desirable position, which led to the removal of her responsibilities. However, Plaintiff conceded during her deposition that the transfer never actually took effect. Under these circumstances, Plaintiff cannot show that she suffered an adverse employment action on account of the purported transfer.

After Plaintiff submitted her hardship request, Plaintiff contends that Defendant Ortiz-Rodriguez began the process of reassigning her from 5-Squad to the "last out" or overnight shift in 3-Squad. The change was to go into effect on July 1, 2022. (*See* Notification of Reassignment, ECF 51-17; Archie Dep. Tr., ECF 51-5, at 235:19-24). Plaintiff concedes, however, that the reassignment never took effect:

> Q.  Okay. Up through, like, current day – I realize you're out on leave right now. But up through current day, you've always worked 7:00 to 3:00?
>
> A.  Yes. That's because my hardship didn't expire yet, so I was still working 7:00 to 3:00. And then once my hardship expired, I still stayed on 7:00 to 3:00. Because someone filed an EEOC complaint on my behalf. So once that case was open, I still – my shift was not allowed to be changed. *Because if that did not happen, I would have had to went to last out.*
>
> …
>
> Q.  And what does last out mean?
>
> A.  It's the overnight shift working 12:00 a.m. to 8:00 a.m.

Q.      But I believe you testified that you didn't end up working that shift; is that right?

A.      I did not end up working that shift.

(Archie Dep. Tr., ECF 51-5, at 170:5-16, 240:24 – 241:4) (emphasis added). Defendant Ortiz-Rodriguez confirmed the same:

Q.      But you or nobody else ever made her regular shift 3-Squad after the EEO complaint?

A.      After the EEO complaint? I assigned her to 3-Squad, *she never worked it*.

(Ortiz-Rodriguez Dep. Tr., ECF 51-11, at 146:15-18) (emphasis added).

Considering these testimonies, particularly Plaintiff's concession, it is apparent that the demotion, less desirable transfer, and the removal of responsibilities never occurred. And since they were never effectuated, these claimed discrimination actions do not fall within the definition of an adverse employment action. Accordingly, the City's motion for summary judgment is granted with respect to Plaintiff's discrimination claims premised on these non-occurring adverse employment actions.

*Restricted Duty and Loss of Firearm*

As to Plaintiff's restricted duty and the loss of her firearm contentions, this Court finds that these contentions are adverse employment actions. *See Brooks v. City of Philadelphia*, 2015 WL 505405, at *7 (E.D. Pa. Feb. 6, 2015) ("Plaintiff's detail out of the specialized and respected NSF unit to administrative desk duty, and the required relinquishment of her weapon, constitutes a significant change in her employment status that rises to the level of an adverse employment action.") (citing *Caver v. City of Trenton*, 420 F.3d 243, 256 (3d Cir. 2005). The City acknowledges that these events occurred due to overlapping investigations into Plaintiff but does not offer legal support to dispute that these actions were adverse employment actions. (*See* City's

Mot., ECF 50, at p. 15) ("Plaintiff was investigated twice for child abuse . . . and once for corruption. As Lt. Hunter testified, each of these overlapping investigations warranted the removal of Plaintiff's weapon until the investigation could be completed, with the latter investigation resulting in her suspension"). Accordingly, this Court finds that Plaintiff's placement on restricted duty and the loss of her firearm constitute adverse employment actions. As such, Plaintiff's restricted duty and the loss of firearm claim proceeds to the next step of the analysis, that is, Plaintiff must show that her placement on restricted duty and the loss of her firearm occurred under circumstances from which there is an inference of discrimination.

2. *Inference of Discrimination*

To support an inference of discrimination, a plaintiff generally must present comparator evidence — that is, "evidence that [the employer] treated 'similarly situated' individuals not within plaintiff's protected class more favorably than it treated plaintiff." *Darby v. Temple Univ.*, 216 F. Supp. 3d 535, 542 (E.D. Pa. 2016) (quoting *Wilcher v. Postmaster Gen.*, 441 F. App'x 879, 881 (3d Cir. 2011)). In the absence of comparator evidence, the plaintiff may present "evidence of similar discrimination of other employees, or direct evidence of discrimination from statements or actions by [her] supervisors suggesting animus." *Golod v. Bank of Am. Corp.*, 403 F. App'x 699, 702 n.2 (3d Cir. 2010). When using comparator evidence, "[t]he plaintiff has the burden of demonstrating that similarly situated persons were treated differently." *Simpson Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 645 (3d Cir. 1998). For a person to be "similarly situated," the person must be similar in "all relevant respects." *Ospatnik v. Norfolk S. Corp.*, 335 F. App'x 220, 223 (3d Cir. 2009). In assessing similarly situated comparators, relevant factors include "the employees' job responsibilities, the supervisors and decision-makers, [and] the nature of the misconduct . . . ." *Wilcher*, 441 F. App'x at 882. The nature of the instances of misconduct must

be of "comparable seriousness." *Opsatnik*, 335 F. App'x at 223 (internal citations omitted). However, "summary judgment is appropriate where there is no evidence from which a jury could conclude the parties were similarly situated." *Abdul-Latif v. Cnty. of Lancaster*, 990 F. Supp. 2d 517, 526 (E.D. Pa. 2014).

Here, Plaintiff offers no comparator evidence to support her claim of discrimination. In the absence of comparator evidence, Plaintiff attempts to meet her burden with respect to an inference of discrimination by merely showing that the City's explanation for the unusually long time for her to receive her firearm lacks credibility. In support of this approach, Plaintiff cites to *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133 (2000) to argue that exposing the lack of credibility of a defendant's reasons is enough to show an inference of discrimination. However, Plaintiff's proffered interpretation is misguided. In *Reeves*, unlike here, it was "undisputed" that the plaintiff had met his *prima facie* burden. *Id.* at 142. At issue, in the context of a Rule 50 motion,[11] was whether the plaintiff had presented sufficient evidence of pretext to permit the trier of fact to disbelieve the employer's proffered non-discriminatory reason(s) for the termination. *Id.* at 143. Here, Plaintiff has not yet satisfied her *prima facie* burden. Thus, her reliance on the *Reeves* Court's analysis of pretext is inapposite.

As noted, a plaintiff may present "evidence of similar discrimination of other employees, or direct evidence of discrimination from statements or actions by [her] supervisors suggesting animus" in the absence of comparator evidence. *Golod*, 403 F. App'x at 702 n.2. Plaintiff, however, does not offer any such evidence. As such, Plaintiff fails to meet her *prima facie* burden of discrimination with respect to the restricted duty and loss of her firearm discrimination claims.

---

[11]    Rule 50 governs judgment as a matter of law in a jury trial; related motion for new trial; and conditional rulings.

Since she has not met her burden, summary judgment is entered in favor of the City and against
Plaintiff on her discrimination claims brought under Title VII, § 1983, and the PHRA.

### Plaintiff's Retaliation Claims Under Title VII and the PHRA

Plaintiff asserts claims for retaliation premised on her allegations that the City took several
adverse employment actions against her based on her complaints of discrimination and submission
of hardship requests to change her shift hours.  The City moves for summary judgment on these
retaliation claims on the basis that Plaintiff has failed to present evidence sufficient to show at this
stage that the City's actions were adverse employment actions and/or the requisite causal
connection between any protected activity (complaints of discrimination and the hardship requests)
and the alleged adverse employment actions.  This Court agrees with the City.

Like her discrimination claims, Plaintiff's retaliation claims are subject to the *McDonnell
Douglas* burden-shifting analysis.  *Moore v. City of Phila.*, 461 F.3d 331, 342 (3d Cir. 2006).[12]  To
establish a *prima facie* case of retaliation, Plaintiff must show that:  (1) she engaged in activity
protected by Title VII; (2) the City took a materially adverse employment action against her; and
(3) a causal connection exists between her participation in the protected activity and the City's
adverse action.  *Wilkerson v. New Media Tech. Charter Sch., Inc.*, 522 F.3d 315, 320 (3d Cir.
2008).  Once a plaintiff presents evidence sufficient to meet each of the *prima facie* elements, the
burden shifts to the employer to articulate a non-retaliatory reason for its actions.  *See id.*  The
burden then shifts back to the plaintiff to show that the employer's offered reason is pretextual and
that retaliation was the real reason for the adverse employment action.  *See id.*  To fall within Title
VII's protection, the protected activity must relate to a discriminatory employment practice

---

[12]     Plaintiff's retaliation claims under the PHRA are also subject to the *McDonnell Douglas* burden-
shifting analysis.  *See Boykins v. SEPTA*, 722 F. App'x 148, 156 (3d Cir. 2018).

deemed unlawful by Title VII. *See Curay-Cramer v. Ursuline Acad. of Wilmington, Inc.*, 450 F.3d 130, 135 (3d Cir. 2006).

As noted, Title VII prohibits employment discrimination based on "race, color, sex, religion, or national origin," 42 U.S.C. § 2000e-2, and the PHRA prohibits "discrimination against individuals or groups by reason of their race, color, familial status, religious creed, ancestry, age, sex, national origin, handicap or disability . . . ." 43 Pa. Cons. Stat. § 952(a). "A general complaint of unfair treatment does not translate into a charge of illegal [] discrimination." *Daniels v. Sch. Dist. of Phila.*, 982 F. Supp. 2d 462, 485 (E.D. Pa. 2013) (quoting *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir. 1995)). To qualify as a protected activity, the employee's complaint must identify the employer's unlawful practice by either explicitly or implicitly identifying the protected characteristic. *Barber*, 68 F.3d at 702.

A causal connection between the protected activity and the adverse action may be inferred from: (1) an unusually suggestive temporal proximity between the complaints of discrimination and the adverse employment action; (2) an intervening pattern of antagonism following the protected conduct; or (3) the proffered evidence examined as a whole. *Kachmar v. SunGuard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997). "Temporal proximity alone suffices only when it is 'unusually suggestive of retaliatory motive.'" *Simoni v. Diamond*, 835 F. App'x 660, 663 (3d Cir. 2020) (citing *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997)).

*1. Adverse Employment Actions*

For retaliation claims, "the standard required to show an 'adverse employment action' differs from the standard used for claims of discrimination." *Davis v. City of Newark*, 285 F. App'x 899, 904 (3d Cir. 2008) (citing *Moore*, 461 F.3d at 341). In the retaliation context, an adverse employment action is one that "might have dissuaded a reasonable worker from making

or supporting a charge of discrimination." *Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181,

195 (3d Cir. 2015) (quoting *Burlington*, 548 U.S. at 68).  Adverse employment actions may include

"undesirable reassignment, demotion, or discharge."  *Alers v. City of Phila.*, 919 F.Supp.2d 528,

547 (E.D. Pa. 2013).

    In the operative complaint, Plaintiff alleges the same factual allegations set forth in her

discrimination claims — that the City retaliated against her and took the following adverse

employment actions against her:  (1) demotion, less desirable transfer, and the removal of her

responsibilities; (2) assignment to the worst police vehicles; and (3) retaliatory harassment, which

also includes the assignment to the worst vehicles.[13]  For the reasons discussed below, none of the

foregoing alleged actions constitutes adverse employment actions supportive of Plaintiff's

retaliation claims.

    For the same reasons set forth above with respect to Plaintiff's disparate treatment claims,

this Court finds that Plaintiff's retaliation claims premised on  the demotion, less desirable transfer,

and removal of responsibilities are not adverse employment actions  because the transfer on which

they are based never took effect.  Accordingly, the City's motion for summary judgment is granted

with respect to Plaintiff's retaliation claims premised on these non-occurring actions.

---

[13]     Plaintiff's response to the City's Motion for Summary Judgment also includes claims of retaliatory
denial of overtime and retaliatory harassment in the form of mistreatment from peers, which Plaintiff claims
manifested in the form of being excluded from activities such as a photoshoot, and a meeting between
Plaintiff and Defendant Ortiz-Rodriguez on October 20, 2022, where Defendant Ortiz-Rodriguez allegedly
humiliated and embarrassed Plaintiff in front of her peers.  (*See* Pl.'s Opp., ECF 51-2, at pp. 13-14).
Notably, these claims are not in Plaintiff's Amended Complaint.  Accordingly, these alleged new claims
are improper, and this Court will not entertain them.  *See Bell v. City of Philadelphia*, 275 F. App'x 157,
160 (3d Cir. 2008) ("A plaintiff 'may not amend his complaint through arguments in his brief in opposition
to a motion for summary judgment.'") (citations omitted).  In *Bell*, the court declined to address the merits
of plaintiff's right to petition component of his First Amendment retaliation claim, where his complaint
only mentioned the claim premised on speech and association components.  *Id.*

As to Plaintiff's contention of discriminatory retaliation based on the assignment to the worst police vehicles, this Court also finds that this contention is not an adverse employment action for the same reasons mentioned above with respect to Plaintiff's discrimination claim.  *See Sierra*, 2008 WL 11412098, at *8 (finding that assignment of newer police vehicles to less senior officers did not constitute an adverse employment action for a retaliation claim because it was a mere inconvenience and was not "*materially* adverse to plaintiff's job status").  Though Plaintiff baldly asserts that an assignment to the worst police vehicle would dissuade an officer from taking protected activity, Plaintiff does not provide further factual or legal support for this argument.[14] Accordingly, summary judgment is entered in favor of the City on Plaintiff's retaliation claims brought under Title VII and the PHRA.

### Plaintiff's Retaliation Claim under § 1983

Plaintiff also asserts a § 1983 claim for retaliation premised on the City's alleged retaliatory actions in response to Plaintiff's exercise of First Amendment rights.  Specifically, Plaintiff contends she was punished and accused of insubordination for taking a photograph of another police officer, purportedly to expose corruption showing that the other officer was stealing time while on the job.  To establish a First Amendment retaliation claim, a public employee must show "(1) that the activity in question is protected by the First Amendment, and (2) that the protected activity was a substantial factor in the alleged retaliatory action."  *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006).  The First Amendment "protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern."  *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006).  However, "[s]peech by government employees receives less

---

[14]    Plaintiff again cites to *King*, 2008 WL 4492503, to support her argument that assignment to the worst police vehicles is an adverse employment action for a retaliation claim.  As noted, *King* is inapposite because the plaintiff in *King* did not premise a retaliation claim based on an assignment to the worst vehicles.

protection than speech by members of the public." *Amalgamated Transit Union Loc. 85 v. Port Auth. of Allegheny Cnty.*, 39 F.4th 95, 103 (3d Cir. 2022). Notwithstanding, "public employees do not surrender all of their First Amendment rights merely because of their employment status." *Munroe v. Cent. Bucks Sch. Dist.*, 805 F.3d 454, 465 (3d Cir. 2015), *as amended* (Oct. 25, 2019). Notably, the act of taking a photograph is protected by the First Amendment. *See Fields v. City of Philadelphia*, 862 F.3d 353, 358 (3d Cir. 2017) ("The First Amendment protects actual photos, videos, and recordings . . . ."); *see also Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 309 F.3d 144, 158 (3d Cir. 2002) ("'Speech' is not construed literally, or even limited to the use of words. Constitutional protection is afforded not only to speaking and writing, but also to some nonverbal acts of communication, *viz.*, 'expressive conduct' (or 'symbolic speech')."); *Gilles v. Davis*, 427 F.3d 197, 212 (3d Cir. 2005) ("More generally, photography or videography that has a communicative or expressive purpose enjoys some First Amendment protection.").

### 1. Plaintiff's Speech is Protected by the First Amendment

For a public employee's speech to be protected under the First Amendment, the public employee must show that (a) in making the speech she spoke as a private citizen, and (b) the speech involved a matter of public concern. *Id.* However, public employees who make statements pursuant to their official duties do not speak as citizens for First Amendment purposes. *Javitz v. Cnty. of Luzerne*, 940 F.3d 858, 864 (3d Cir. 2019). That is, a public employee that does not speak pursuant to official duties instead speaks as a private citizen. *See Dougherty v. Sch. Dist. of Philadelphia*, 772 F.3d 979, 988 (3d Cir. 2014) (finding that plaintiff, who was an administrator for the school district, spoke as a private citizen when he disclosed alleged misconduct, which was outside of his routine job responsibilities). In addition, the "content of the speech may involve a matter of public concern if it attempts 'to bring to light actual or potential wrongdoing or breach

of public trust on the part of government officials.'" *Baldassare v. State of N.J.*, 250 F.3d 188, 195 (3d Cir. 2001) (quoting *Holder v. City of Allentown*, 987 F.2d 188, 195 (3d Cir. 1993)).

Here, Boyer asked Plaintiff to (and did) photograph another police officer, who was allegedly stealing official time, to expose corruption.  The City argues that the speech did not involve a matter of public concern because Plaintiff took the photograph in exchange for information on her investigation in *quid pro quo* fashion.[15]  Plaintiff argues that there was no official police business being conducted at the time and no Police Department rule exists to prevent officers from photographing each other.

This Court finds that Plaintiff's act of photographing a fellow police officer, at the request of someone not part of the Police Department, was an action taken by a private citizen.  Plaintiff's "speech" in this instance was not made pursuant to her official duties because taking photographs of other police officers is generally not part of the responsibilities of a police officer.[16]  In addition, the Third Circuit has held that "recording police activity in public falls squarely within the First Amendment right of access to information." *Fields*, 862 F.3d at 358.

Plaintiff also asserts that she took the photograph to expose the corruption of another police officer.  In response, the City argues that Plaintiff merely took the photograph to get more information about her own investigation in *quid pro quo* fashion.  The Third Circuit has held that "[d]isclosing corruption, fraud and illegality in a government agency is a matter of significant public concern." *Baldassare*, 250 F.3d at 196 (quoting *Feldman v. Philadelphia Hous. Auth.*, 43 F.3d 823, 829 (3d Cir. 1994).  In *Baldassare*, the plaintiff (an investigator with the Bergen County

---

[15]    Notably, the City provides no legal support for this argument.

[16]    Plaintiff was assigned to the DVIC during the photograph incident.  She testified that her only responsibility at the time was checking officers in and out at the security booth.  (Archie Dep. Tr., ECF 51-5, at 68:20 – 70:13).

Prosecutor's Office) investigated allegations regarding criminal activity by two police officers and, as a result, faced retaliation. *Baldassare*, 250 F.3d at 193. The Third Circuit noted, "Baldassare's motive for performing the investigation is immaterial" and found that his "conduct and expression in the internal investigation of employees . . . constituted a matter of public concern." *Id.* at 197. Similarly, even if part of the reason that Plaintiff took the photograph was for her own benefit, it does not diminish the fact that the photograph could have also been used to expose corruption. Accordingly, Plaintiff's conduct is protected by the First Amendment.

   *2. The Protected Conduct was a Substantial Factor in the Alleged Retaliatory Action*

   Whether the protected conduct was a substantial factor in the alleged retaliatory action is a question for the fact finder. *Baldassare*, 250 F.3d at 195. Here, Plaintiff argues that the City retaliated against her by suspending her and accusing her of insubordination for taking the photograph. The City rebuts that the suspension was tied to her race, gender, color, or affiliation with a disabled person but concedes that a suspension occurred because of the incident. (*See* City's Mot., ECF 50, at p. 24). Clearly, at this stage of the litigation, Plaintiff has introduced sufficient evidence to show that a genuine dispute exists on this claim and, thus, survives summary judgment. As such, it is for the jury to ultimately resolve the question at hand, since "only *genuine* questions of fact should be determined by the jury" for this element of the claim. *Hill v. City of Scranton*, 411 F.3d 118, 127 (3d Cir. 2005); *see also Watters v. City of Philadelphia*, 55 F.3d 886, 892 (3d Cir.1995) (noting District Court concluded that plaintiff made sufficient showing that speech was substantial factor motivating termination to submit question to the jury). Accordingly, the City's

motion for summary judgment is denied with respect to Plaintiff's § 1983 claim for First Amendment retaliation.[17]

**CONCLUSION**

For the foregoing reasons, this Court finds that Plaintiff has failed to meet her summary judgment burden with respect to her discrimination claims brought under Title VII (Count I), § 1981 (Count III), § 1983 (Count V), and the PHRA (Count VII), and retaliation claims brought under Title VII (Count II), § 1981 (Count IV), and PHRA (Count VII).  Accordingly, Defendants' motion for summary judgment is granted as to these claims.  Defendants' motion is denied with respect to Plaintiff's § 1983 claim for retaliation premised on the exercise of her First Amendment rights.  An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, J.

---

[17]    After a plaintiff meets the two elements required to establish a § 1983 claim for retaliation for First Amendment conduct, the burden shifts to the defendant to show that its interests in promoting workplace efficiency and avoiding disruption outweigh the public employee's interest in the activity in question.  *See Fenico v. City of Philadelphia*, 70 F.4th 151, 162 (3d Cir. 2023) (citing *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cnty., Illinois*, 391 U.S. 563, 568 (1968).  The employer "must still establish likely disruption through record support and courts have long required more than 'unadorned speculation as to the impact of speech.'"  *Fenico*, 70 F.4th at 166 (citation omitted); *see also Watters*, 55 F.3d at 897-98 (citing lack of evidence to support employer's assertion that destruction of particular relationships would disrupt office operations in reversing judgment as a matter of law for employer).  Here, the City makes no argument about their interest in promoting workplace efficiency and avoiding workplace disruption.  As such, Plaintiff's § 1983 claim for retaliation survives summary judgment.